## Peirce v. Zoning Board of Adjustment (et al., Appellant).

Argued January 9, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*John P. Yatsko,* with him *Elmer L. Menges,* for ap-
pellant.

*Knox Henderson,* with him *Henderson, Wetherill &
O'Hey,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March
21, 1963:

This is an appeal from an order of the Court of
Common Pleas of Montgomery County which reversed
the refusal of the Zoning Board of Adjustment of Up-
per Dublin Township (Board) to grant a variance to
Frank A. Peirce to use a portion of his residentially-
zoned land for gasoline service station purposes.

Pennsylvania Avenue (Avenue)—a 60 foot wide and
very heavily traveled highway—leads from the Bethle-
hem Pike to Fort Washington Industrial Park,[1] to the
Fort Washington entrance to the Pennsylvania Turn-
pike and to a clover-leaf interchange between the Ave-
nue, the Turnpike and Route 309 By-pass Thruway. On
the north side of the Avenue, Peirce owns a large (2.73

---

[1] In this Industrial Park are located many commercial and in-
dustrial establishments.

acre) tract of land and the plot of ground which is the subject matter of this appeal is a portion of that larger tract, having a frontage on the Avenue of 182.24 feet and a depth extending northeastwardly from the Avenue of 155 feet. All this land is located in Upper Dublin Township.

On the south side of the Avenue—*located in White-marsh Township*—and directly opposite Peirce's plot is the plant of Chemical Concentrates Corporation (Chemical Company); on the same side of the Avenue to the east of the Chemical Company land are a substation of Philadelphia Electric Corporation, a bank, a post office and other office buildings, while to the west of the Chemical Company land are a printing shop, two residences and a gasoline service station. All this area on the south side of the Avenue is zoned "Commercial" by Whitemarsh Township.

Peirce's land is zoned "B-Residential" by Upper Dublin Township (Township). However, to the east of Peirce's plot and thirty feet away is "Commercial Drive"—a 70 feet wide driveway—which constitutes the main entrance to the Industrial Park and between Peirce's land and Commerce Drive is a 30 feet strip of land which is occupied by a sewage pumping station, part of the Township's sanitary sewer system. To the west of Peirce's plot is the remainder of Peirce's land— *having a frontage of approximately 300 feet on the Avenue*—now under lease for the storage of equipment and materials for a sewer contractor engaged in laying sewers for the Township. Adjoining this other land of Peirce to the west are three residences and next to them are a residence with a shop (used as a contractor's shop and garage), an office and an apartment in the rear.

When Peirce acquired this entire property—1934— the zoning ordinance had not been passed, the Avenue had not been widened, the Turnpike, the Thruway and

the Industrial Park, of course, had not been built or even contemplated. On part of his property—prior to 1937—Peirce built three residences, but, due to the changing nature of the neighborhood, he did not build any more houses.

In approximately 1958 the lot in question was part of an area which was submitted to the township commissioners for re-zoning but the commissioners refused to re-zone.

In 1961, Peirce, after being denied a variance by the building inspector, appealed to the Board for a variance so that he might convey this lot to Humble Oil Company and that the latter might erect on the lot a two-bay gasoline service station. The Board, after a hearing, denied Peirce's application and, on appeal to the Court of Common Pleas of Montgomery County, that court reversed the Board and granted the variance for the proposed use. The township appeals from that ruling.

The court below did not take additional testimony; therefore, the question before us is whether the Board abused its discretion or committed an error of law: *Upper Providence Township Appeal*, 407 Pa. 20, 22, 179 A. 2d 194; *Merry v. Zoning Board of Adjustment*, 406 Pa. 393, 178 A. 2d 595; *Mignatti Appeal*, 403 Pa. 144, 146, 168 A. 2d 567.

The law on the subject of variance is clear. In *Upper St. Clair Township Grange Zoning Case*, 397 Pa. 67, 71, 152 A. 2d 768, we stated: ". . . A variance may be granted only after the applicant clearly proves two factors: (1) that an unnecessary hardship, unique to the particular property, will result if the variance is not granted; and (2) that the proposed use will not be contrary to the public interest: [citing cases]. The party seeking the variance has the burden of proving justification for its grant and he does not do so by proving a mere hardship but must prove an 'unneces-

sary hardship'." The difficulty arises in the application of the law to the facts of a particular case.

An examination of the findings and opinion of the Board clearly indicates that the Board recognized that this lot of land was subject to a "hardship". The Board stated, inter alia, "[Peirce] complains that the lot which he desires to sell, and the purchaser desires to use for a gasoline station, is contiguous to a limited industrial area, also a heavily traveled highway, that it faces a commercial area in an adjoining township, that it is subject to annoying chemical odors from Chemical Concentrates Company in Whitemarsh Township. *None of these facts are disputed,* but while true, it must also be remembered that the remaining part of [Peirce's] land and that of his residential neighbors is also subject to the same". (Emphasis supplied). Furthermore, and most important on the question of "hardship", there is uncontradicted testimony that this lot can not be sold for any purpose permitted within the present zoning classification. Peirce testified that he had "received no offers for it" although efforts to that end were made; a Mr. Dager stated that, as a realtor, he had attempted to sell the property for over a year and had received no offers for it and, in his opinion, the property could not be used for residential purposes; a Mr. Leese, another realtor, stated that the property was not salable for any use permitted under the ordinance. That this lot is subject to a "hardship" is clear beyond question. It is not a situation, such as presented in *Crafton Borough Appeal,* 409 Pa. 82, 185 A. 2d 533, where the property *could* be used for residential purposes but could be *more gainfully used* for the purpose of conducting a gasoline station.

The close proximity of the sewage station, the immediacy of the heavily traveled entrance to the Industrial Park, the odors from the Chemical Company plant, the heavy, and recently increased, traffic on the

adjoining highway and the presence in the *immediate* area of commercial enterprises all preclude the enjoyment of this land for residential purposes. That employment of the land for such purposes is unfeasible and impossible is proven by the experience in trying to effect a sale of it for such purposes.

The crux of the decision of the Board is that, even though this land was subject to a "hardship", the "hardship" was not unique to the property. In this respect, the Board completely ignored the realities of the situation. This property is: (1) the *only* property adjacent to the sewage pumping station; (2) the *only* property located in immediate proximity to the entrance to the Industrial Park and to the commercial and industrial enterprises located therein; (3) it is the *only* property in direct line from the chemical plant and the *first* property to get the odors when they emanate from the plant; (4) it is the *only* property which it has been shown, without contradiction, is unsalable for residential purposes.

Peirce urges, but we do not agree, that *Ferry v. Kownacki*, 396 Pa. 283, 152 A. 2d 456 controls this situation; the character of the terrain and other facts in *Ferry* distinguish it from the case at bar. However, the rationale of *Ferry* is presently applicable because in both situations unless the variance is granted a confiscation of this land for practical purposes results. The Board, in effect, suggests that the remedy open to Peirce is by way of re-zoning by the Commissioners; that remedy has been exhausted and re-zoning has been denied. Peirce well argues that the position of the Board is: "We are inclined to agree that your land is being confiscated; however the land of your neighbors is equally being confiscated; therefore there is nothing unique in the confiscation taking place with respect to your land . . . ." As a practical matter, if this variance be denied, Peirce's land is being confiscated but

we need not rest our determination upon this ground for the record clearly shows that Peirce has proven that this plot of ground is subject to an unnecessary "hardship" which is unique and peculiar to this particular lot and that the grant of this variance in nowise affects or injures the public interest.

The Board, in denying this variance, abused its discretion and misapplied the law to the factual situation portrayed upon this record.

Order affirmed. Costs on Township.

Mr. Justice COHEN dissents.